## First National Bank of New Wilmington v. Kuhn et ux.

*William McElwee, Jr.,* for plaintiff.

*Clarence A. Patterson* and *Homer C. Drake,* for petitioners.

CHAMBERS, J., Sept. 3, 1929.—The plaintiff in this case issued a *scire facias sur* mortgage against defendants and obtained judgment thereon, upon which execution was issued. After the obtaining of the judgment and before execution was issued, the defendants made an assignment for the benefit of creditors under the Insolvency Act of June 4, 1901, P. L. 404. The execution, however, was issued before the assignees had filed their bonds and qualified to act as such assignees. After being qualified, the assignees presented a petition asking that the writ of execution be stayed and that the real estate levied upon be turned over to the assignees to be managed, controlled and sold by them for the benefit of the creditors of the defendants. A rule was issued upon the plaintiff, and in reply to said rule the plaintiff contends that the defendants are not such persons as are exempted from the operation of the Federal Bankruptcy Act of July 1, 1898, 30 Stat. at L. 544, and, hence, as to them, the Insolvency Act of this Commonwealth is suspended and inoperative; and, further, that the property levied upon is encumbered by liens to a greater amount than the value of the property, and for that reason it would be inexpedient to turn over the lands subject to the levy to the assignees. The assignees filed a reply, contending that Harry V. Kuhn is a wage-earner within the meaning of the Federal Bankruptcy Act, and denying that it would be inexpedient for the assignees to sell the real estate levied upon.

On the issue as presented, testimony was taken, and from such testimony it appears that, prior to 1925, Harry V. Kuhn had been engaged in operating bus lines; that he disposed of the bus lines and erected in the Borough of New Wilmington a garage, restaurant, with an apartment above, and a shoe repairing room, these all being erected on the same lot. He himself operated the garage until the year 1925, when his health failed him, and he leased the property and sold out the business. For a period of about a year he was unable to do any work, but since that time has been working as a laborer and receiving wages totaling less than $1500 per year. In addition to the property described, a residence property in the Borough of New Wilmington is owned by Maude E. Kuhn, the other defendant, and was embraced in the mortgage of the plaintiff. The total rents received from the business property when it is all occupied amount to $207 per month, and it appears that since the leasing thereof in 1925 it has been for the most part rented, and at the date of hearing all the property was occupied and rents being received with the exception of the shoe shop, the rent of which has been $15 per month.

It is conceded that if the defendants are not exempted from the operation of the Federal Bankruptcy Act, the Insolvency Act of this Commonwealth,

approved June 4, 1901, is suspended and inoperative, and that the assignees are without authority in the premises. This has been so well established that it is unnecessary to cite authority on this proposition. It, therefore, becomes our duty to determine whether or not Harry V. Kuhn is a wage-earner within the meaning of the Federal Bankruptcy Act. A wage-earner is 'defined by the Bankruptcy Act as one "who works for wages, salary, or hire, at a rate of compensation not exceeding $1500."

If we go no further than the words of the statute, it would appear as though Harry V. Kuhn were such a wage-earner. From the testimony it appeared without contradiction that Harry V. Kuhn quit business on account of ill-health; that for a period of two or three years he has not undertaken to engage in any line of business, but has been a *bona fide* worker at wages, and that at no time during this period has he earned by his labor in excess of $1500 per year. It does appear, however, also uncontradicted, that during this same period he has been receiving as rents from his business property sums in excess of $2000 per year. Does this make any difference in his status? The exact question before us, as far as we are able to determine, does not seem to have been passed upon. However, there are decisions which have a bearing upon the question and which we will discuss somewhat. In the First National Bank of Wilkes-Barre *v.* Barnum, 160 Fed. Repr. 245, Judge Archbald, then District Judge, in a consideration of the language of the act, says: "A wage-earner is defined by the Bankruptcy Act as one 'who works for wages, salary, or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year.' By this it is evidently intended to relieve from adverse proceedings those who, not being engaged in business or trade, depend for a living upon the result of individual labor or effort without the aid of property or capital."

We note that here it is suggested that the wages or salary must be the main source of income upon which the person depends for his living. In re Naroma Chocolate Co. et al., 178 Fed. Repr. 383, it is held: "A person who is engaged in a manufacturing or trading business does not come within the ordinary usage of the term wage-earner merely because, while engaged as a manufacturer or trader, he may earn wages by working for another in a different occupation, nor, if debts are contracted by a bankrupt while engaged in the occupation of a manufacturer or trader, is he exempted from involuntary proceedings because he subsequently becomes a wage-earner."

In re Wakefield, 182 Fed. Repr. 247, it is held: "Where an alleged bankrupt had engaged in a mercantile business in which he had contracted debts and thereafter acquired property by inheritance, worth $40,000, which he immediately assigned to his brother for $180, and during the year the assignment was made received wages for his services exceeding $1500 per annum, he was not a 'wage-earner,' exempt from bankruptcy adjudication, under the provision of the bankruptcy act authorizing an adjudication against any natural person, except a wage-earner, defined to be an individual working for wages at a rate not exceeding $1500 per year."

There are two cases, however, which are closer to the facts of our case than any others. They are the case of Carpenter *v.* Cudd et al., 174 Fed. Repr. 603, 23 Am. Bank. Reps. 463, and the case of First National Bank of Bode *v.* Williams, 13 Am. Bank. Reps. (N. S.) 719. In the case of Carpenter *v.* Cudd et al., Carpenter had been operating a mercantile establishment. A year before the bankruptcy proceeding was instituted, he incorporated this business for $25,000, of which he retained $17,600 in stock and sold stock for the balance. He became president of the company at a salary fixed at $900 per year, but,

in addition to this sum, although there were no dividends, he drew about $2000 from the business during the year. It also appears that he had other property and business from which he received returns. In commenting upon this situation, the court says:

"It is contended by the appellants that, inasmuch as the bankrupt was the president of the W. C. Carpenter Company, and as such was paid a salary of $900 per year, he was a wage-earner under the definition cited above. But every individual who is paid a salary of less than $1500 is not, therefore, necessarily a wage-earner in the meaning of the law. A person extensively engaged in some mercantile or manufacturing business might at the same time incidentally earn a salary less than $1500 per year in some collateral employment; or the individual owner of a large business might incorporate it, and being entitled, as a holder of a great majority of the stock, to practically all of the dividends earned, might prefer that his salary as president and head of the business should be placed at a nominal figure or at a figure less than $1500 per year, and much less than he would expect to draw for his service in the management of the business. Manifestly, Congress did not intend to exempt such persons as these from the operation of the law.

"In the case at bar, Carpenter was nominally drawing only $900 salary per year, but he owned two-thirds of the stock of the corporation and had such control over its affairs that he actually drew more than $2000 additional during the year preceding the institution of bankruptcy proceedings. His own testimony justifies the conclusion that he was also in the business of buying and selling real estate. He estimated the value of his holdings outside of the W. C. Carpenter Company to be worth nearly $90,000. Under these circumstances, he cannot be held to be a wage-earner in the sense of the statute, and the decision of the court upon the evidence offered upon this point was correct."

In the case of the First National Bank of Bode v. Williams, *supra*, it appears that Williams owned one-half interest in an estate consisting of a farm of 240 acres and two lots in the town of Bode, Iowa. He had been a farmer for thirty or forty years. In January, 1925, he removed from a farm to the lots in Bode, where he built an oil-filling station. He conducted this until Feb. 1, 1927, then leased it, thereafter collecting the rents until Dec. 3, 1927. About March 1, 1927, he bought a stallion valued at $150; kept him until July 3, 1927; sold him for $90. After that he worked for wages and was so employed at the time the bankruptcy proceedings were instituted. It was held in this case that Williams was a wage-earner within the meaning of the Federal Bankruptcy Act. In this latter case it does not appear what amount of rents were received from this oil station. So that while both these cases have some similarity to the case before us, yet they have their distinguishing features. In Carpenter v. Cudd et al., while the salary was only $900 per year, yet Carpenter was drawing from the same business an additional $2000 per year. On the other hand, in the Williams case, while it appears that Williams was a *bona fide* wage-earner of less than $1500 a year, it does not appear just what amount of rents he was receiving from his oil station. This may have been an inconsiderable amount.

In the case at bar we have one who is receiving from a business property which he had formerly occupied himself, and in the conduct of which business he had largely contracted the debts now owed by him, rents in excess of $2000 a year and largely in excess of the money received by him as wages. It is true that Kuhn, on the witness-stand, testified that he depended upon his wages for his living; that he used the rents from his buildings to pay taxes,

interest, insurance, etc., but that his living expenses came out of his wages as a laborer. However, we cannot lose sight of the fact that, had he not had this income from his property, he would not have had his wages to apply to his living. His taxes, interest, insurance, etc., were obligations which he was bound to meet or lose his property. If he had no rents coming in to pay these then he must necessarily have used his wages for this purpose or lost his property. Can he then say that he was living on his wages, while he was receiving in the way of rents a much larger sum of money, which was being expended for his benefit? While we are not without hesitation in the matter, the weight of authority seems to us to indicate that, in order to be exempt, the wage-earner must be dependent upon his wages for his living, and that where his income from other sources is largely in excess of that which he received as wages, salary, or hire, he does not come within the exempted class. Having reached this conclusion, it is unnecessary for us to consider the second question raised, and we, therefore, make the following

*Order.*—Now, Sept. 3, 1929, the rule issued Aug. 10, 1929, is discharged and the sheriff is directed to proceed with the execution of the writ.